**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JULIO MENDOZA ARANGUEN,

                Petitioner,

      v.

SAMUEL OLSON, Chicago Field Office
Director, U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT, *et al.*,

                Respondents.

Case No. 26 C 5889

Honorable Sunil R. Harjani

## <u>MEMORANDUM OPINION AND ORDER</u>

U.S. Immigration and Customs Enforcement (ICE) is currently detaining Petitioner Julio Cesar Mendoza Aranguen, a Venezuela national, pending removal proceedings. ICE has denied Petitioner access to a bond hearing, and he petitions this Court to issue a writ of habeas corpus ordering Respondents to schedule a bond hearing or his immediate release from custody. For the reasons discussed below, the first amended petition for a writ of habeas corpus [3] is granted.

### Background

Petitioner, a citizen of Venezuela, has been in the United States since October 27, 2024. [1] ¶ 10. He has no criminal record. *Id.* ¶ 22. Petitioner entered the United States through an appointment with CBP ONE on October 27, 2024, with his wife and two minor children. [3] ¶ 19. Petitioner and his family were granted parole and released into the United States. *Id.* On March 6, 2025, Petitioner timely filed an application for asylum with the Chicago Immigration Court, which included his wife and daughters as derivatives. *Id.* ¶ 20. Petitioner's asylum application remains pending and he has a court date scheduled for August 3, 2026, in Chicago, Illinois. *Id.* In November 2025, Petitioner filed an application for work authorization with USCIS. *Id.* ¶ 21. In connection

with his work authorization, USCIS scheduled Petitioner for a biometrics appointment on May 20, 2026, in Michigan City, Indiana. *Id.* At his USCIS biometrics appointment in Michigan City, Petitioner was detained by ICE. *Id.* ¶ 23. Petitioner was then transferred to the Broadview Processing Center, in Broadview Illinois. *Id.*

Petitioner filed the pending petition for habeas corpus on May 20, 2026. At the time the petition was filed, Petitioner was located at the Broadview Detention Center in Broadview, Illinois. *Id.* ¶ 1. The next day, the Court issued an order setting a briefing schedule for the government's response to the petition and ordering the government not to remove Petitioner from the jurisdiction of the United States and not to transfer him to any federal judicial district other than those in the States of Illinois, Indiana, or Wisconsin. [2].

### Discussion

In his first amended writ of habeas corpus, Petitioner brings three claims: (1) Violation of the Due Process Clause of the Fifth Amendment, (2) Violation of the Immigration and Nationality Act (INA), and (3) Violation of the Administrative Procedures Act. The government challenges the Court's jurisdiction to hear the case as well as the validity of the substantive claims.

### I. Jurisdiction

A district court may grant a petitioner's request for a writ of habeas corpus if the petitioner demonstrates that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). Respondents first argue that the Court lacks jurisdiction to hear this petition under several of the INA's jurisdiction stripping provisions: 8 U.S.C §§ 1252(g), 1252(b)(9), and 1252(a)(2)(B)(ii). [8] at 4. District courts across the country have almost uniformly concluded that none of these statutes strip the court of its jurisdiction, and this Court reaches the same conclusion.

*See Sanchez v. Olson*, 2025 WL 3004580, at *2 (N.D. Ill. Oct. 27, 2025) (citing *Barrajas v. Noem*, 2025 WL 2717650, at *3 (S.D. Iowa Sept. 23, 2025)).

### a. 8 U.S.C. § 1252(g)

Respondents first point to Section 1252(g), arguing it strips this Court of jurisdiction to review the decision to detain the petitioner. [8] at 4; [8-2] at 14–15. That provision states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Because ICE detained Petitioner in connection with its intent to commence removal proceedings against him, Respondents claim their decision to detain him "arises from" their decision to commence those proceedings.[1] [8] at 4. Section 1252(g)'s reach is narrow—"[o]nly challenges to the three listed decisions or actions . . . are insulated from judicial review." *E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021).

Respondents' analysis is contrary to *Reno v. American-Arab Anti-Discrimination Committee*, where the Supreme Court held that Section 1252(g) did not apply to anything beyond those "three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" 525 U.S. 471, 482 (1999) (emphasis in original) (quoting § 1252(g)); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret [the language in Section 1252(g)] to sweep in any claim that can

---

[1] Respondents rely on inapposite cases for this proposition, where individuals sought not habeas relief, as Petitioner does here, but rather damages claims under *Bivens*. *See* [8-2] at 14–16; *e.g.*, *Khorrami v. Rolince*, 493 F. Supp. 2d 1061, 1069 (N.D. Ill. 2007) (noting that petitioner "could have raised his challenges in a petition for habeas corpus"); *Sissoko v. Mukasey*, 509 F.3d 947, 949–50 (9th Cir. 2007) (explaining that an alternative avenue for remedying a false arrest would have been a habeas petition).

technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves.").

Here, Petitioner does not challenge a decision to commence removal proceedings, adjudicate a case against him, or execute a removal order. Rather, he challenges the decision to detain him. *See Carrera-Valdez v. Perryman*, 211 F.3d 1046, 1047 (7th Cir. 2000) (finding "nothing in § 1252(g) precludes review of the decision to confine" pending removal to another nation). Because the decision to detain him is not one of the three listed in Section 1252(g), this Court's ability to review it is not precluded by that section.

### b. 8 U.S.C. § 1252(b)(9)

Next, Respondents contend that Petitioner's habeas petition constitutes an impermissible collateral attack on his removal proceedings that triggers Section 1252(b)(9). Section 1252(b)(9) establishes the Court of Appeals as the exclusive forum for "judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken . . . to remove an alien from the United States." 8 U.S.C. § 1252(b)(9). Respondents contend that Petitioner is challenging the decision to detain him in the first place and that his detention arises from his removal proceedings and is thus insulated from judicial review by the district court. Respondents further contend that the detention cannot be reviewed until a final removal order is issued, and then only by a circuit court as Section 1252(a)(5) says that the only judicial review of a removal order is through a petition filed "with an appropriate court of appeals." [8-2] at 16–18. Respondents thus read these two provisions as working together to divert all claims relating to removal proceedings to a court of appeals post-removal order.

Here, Petitioner challenges the legality of his detention and the denial of his right to seek bond while his removal case proceeds—neither of which are actions arising from a decision to

4

remove Petitioner from the United States. The Supreme Court has stated that Section 1252(b)(9) "does not present a jurisdictional bar" where petitioners "are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined." *Jennings*, 583 U.S. at 294–95. Thus, Respondents are incorrect that Petitioner challenges the detention decision. [8] at 4. Instead, Petitioner claims that he is being unlawfully detained under the mandatory detention framework of Section 1225(b), as opposed to the discretionary one under Section 1226(a). As such, *Jennings* holds that Section 1252(b)(9) does not bar this Court from hearing this claim. Instead, the Supreme Court in *Jennings* observed that adopting this "extreme" interpretation of Section 1252(b)(9)—by "cramming judicial review of those questions into the review of final removal orders would be absurd." 583 U.S. at 293.

### c. 8 U.S.C. § 1252(a)(2)(B)(ii)

Lastly, Respondents argue that 8 U.S.C. § 1252(a)(2)(B)(ii) strips this Court of jurisdiction. That provision precludes judicial review of "any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). But Petitioner's claims do not challenge a discretionary decision by the government to detain him instead of releasing him. Under Section 1225(b), detention is mandatory and not discretionary. Instead, by asserting that he is not subject to detention under Section 1225(b), Petitioner challenges the extent of Respondents' authority under the detention statute, which "is not a matter of discretion." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). Therefore, none of the jurisdiction-stripping provisions cited by Respondents apply to this case.[2]

---

[2] Respondents do not clearly state whether they adopt all of the arguments that the government made in the prior brief, which they attach as an exhibit, or only a subset that they list again—those relating to jurisdiction

## II.     Basis for Detention

Immigration detention is governed by two statutory sections:  8 U.S.C. §§ 1225 and 1226. Section 1225 "authorizes the Government to detain certain aliens seeking admission into the country," while Section 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings," including noncitizens "who were inadmissible at the time of entry." *Jennings*, 583 U.S. at 288–89.  Petitioner insists that his detention should be analyzed under Section 1226(a).  Respondents contend that Section 1225(b)(2) governs Petitioner's detention because he is (1) an "applicant for admission" (2) who is "seeking admission" and (3) is detained for a removal proceeding. [8-2] at 24–27.

Section 1226(a) sets the "default rule" for the discretionary detention of noncitizens "already present in the United States." *Jennings*, 583 U.S. at 303.  Under § 1226(a), immigration authorities may make an initial determination as to detention, but noncitizens may then request a bond hearing before an immigration judge. 8 C.F.R. §§ 1236.1(c)(8), (d)(1).  At the bond hearing,

---

and the merits. *See* [8] at 4.  Respondents thus have waived the exhaustion argument made in *H.G.V.U. v. Smith, et al.*, No. 25 C 10931 (N.D. Ill.), as exhaustion is a non-jurisdictional, affirmative defense, and thus is waivable. *See Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir. 1987).  But even if Respondents had expressly reiterated this argument, the Court would hold that it fails.  First, "sound judicial discretion governs" whether exhaustion should be required. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004).  The refusal to conduct a bond hearing in this case flows largely from *In re Yajure Hurtado*, 29 I. & N. Dec. 216, so "appealing to the BIA would have been futile because the BIA had predetermined the statutory issue." *Gonzalez*, 355 F.3d at 1019 (cleaned up); *see also Ochoa Ochoa*, 2025 WL 2938779, at *2 n.4.  Futility is a sound reason to refrain from requiring exhaustion.  Respondents also do not make, and the brief from *H.G.V.U.* does not include, a ripeness argument, although the government has made such an argument in other similar cases. *See* [8] at 4; [8-2].  However, even if Respondents were to make a ripeness argument, the Court would reject it.  "[A] case is ripe if it is 'not dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Wickstrom v. Air Line Pilots Ass'n, Int'l*, 156 F.4th 835, 840 (7th Cir. 2025) (quoting *Trump v. New York*, 592 U.S. 125, 131 (2020) (per curiam)) (cleaned up).  Here, the alleged harm—detention in violation of the INA and the Due Process Clause of the Fifth Amendment—has already happened.  Because Petitioner alleges that he is currently detained because of the government's actions, the parties' dispute is "concrete, not abstract," and the case is ripe for review. *Id.* at *3.  To the extent Respondents' arguments are being raised and they are not addressed here, the Court agrees and incorporates the reasoning discussed in *Jesus Corona Diaz v. Samuel Olson, et al.*, 2025 WL 3022170, at *2–3 (N.D. Ill. Oct. 29, 2025), for finding that Petitioner need not exhaust his remedies through the immigration courts and that the case is ripe.

the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d); *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006)).

By contrast, Section 1225 governs the detention of those "seeking admission." An applicant for admission is defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States," and "fall[s] into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 287; 8 U.S.C. § 1225(a)(1). "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Jennings*, 583 U.S. at 287. The second category creates a "catchall provision" for mandatory detention "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for [full removal proceedings under Section 1229]." *Id.*; 8 U.S.C. § 1225(b)(2)(A). Unlike noncitizens detained under Section 1226(a), those detained under Section 1225 may only be released "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)). While this language seems broad, the *Jennings* Court went on to explicitly state that "§ 1226 applies to aliens already present in the United States." *Id.* at 303.

Despite the clear language in *Jennings*, Respondents assert that all foreign nationals in the United States are "applicants for admission" regardless of their proximity to the border, the length of time that they have been present here, or whether they ever had the subjective intent to properly apply for admission. [8-2] at 24. Also, they argue that foreign nationals are "seeking admission" no matter how long they have been present in the United States as long as they have "not agreed

7

to depart" or conceded their removability. *Id.* at 25–26. Essentially, Respondents' position is that a noncitizen seeks admission by default; thus, unless he tries to leave the United States, the noncitizen is seeking admission.

Respondents' understanding of Section 1225's scope is expansive, and only plausible, when read in isolation. After all, Section 1225 purports to apply to all "applicants for admission," which the statute defines as "[a]n alien present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). But courts do not read statutory phrases, like "seeking admission," in isolation; "we read statutes as a whole." *Samantar v. Yousuf*, 560 U.S. 305, 319 (2010) (quoting *United States v. Morton*, 467 U.S. 822, 828 (1984)). It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *San Francisco v. EPA*, 604 U.S. 334, 350 (2025) (quoting *Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 320 (2014)).

A person does not ordinarily apply for a status they are not seeking. In Section 1225(b)(2)(A), Congress did not say "applicants for admission" are subject to mandatory detention. Instead, it said that an applicant for admission, who is "an alien seeking admission" is subject to mandatory detention, indicating that there is some difference between an "applicant for admission" and an "alien seeking admission." *See Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute, the same term usually has the same meaning and different terms usually have different meanings."). After all, if the provision were intended to apply to all applicants for admission there would be no need to include the phrase "seeking admission" in the statute. The use of the term seeking implies action—something that is currently occurring, and in this instance, would most logically occur at the border upon inspection. The statute has a temporal element— the petitioner is doing something. *See United States v. Balint*, 201 F.3d 928, 933 (7th Cir. 2000)

(The Supreme Court "has stated that 'Congress' use of a verb tense is significant in construing statutes.") (quoting *United States v. Wilson*, 503 U.S. 329, 333 (1992). When Section 1225 is read in context with Section 1226, it is plain that Respondents' reading of Section 1225(b)(2)—that all deportable aliens are "seeking admission" by remaining in the country and are therefore subject to mandatory detention—is overly, and incorrectly, expansive.

Even if reasonable minds could disagree on the proper interpretation of Section 1225 and Section 1226, this Court is bound to follow the Supreme Court's decision in *Jennings*, which answers this question. In *Jennings*, the Court explained that Section 1225 applies to "certain aliens seeking admission into the country," while Section 1226, in contrast, is a "default rule" that "applies to aliens already present in the United States." 583 U.S. at 289, 303; *see also Nielsen*, 586 U.S. at 396–97 (holding that section 1226(a) applies to most deportable aliens "present in this country"). Far from applying to all unadmitted aliens, *Jennings* explains that Section 1225 applies to aliens at the border—those who "arrive[ ] in the United States" and are "seeking admission into the country." 583 U.S. at 287, 289. Section 1226, meanwhile, applies to aliens present in the country who were inadmissible at the time of entry. In other words, Section 1225 applies to those attempting to enter the country, while Section 1226 applies to those who are already here.

Respondents' proposed construction of Section 1225(b)(2)(A) would also render superfluous certain provisions of Section 1226. Section 1226(a) allows for the release of foreign nationals on bond and with conditions pending a decision on whether they are to be removed from the United States. However, Section 1226(c) requires the Attorney General to take into custody certain categories of foreign nationals pending a decision on their removal. Earlier this year in January 2025, Congress amended Section 1226(c) with the Laken Riley Act to add an additional category of foreign nationals who are subject to mandatory detention. *See* 8 U.S.C. §

9

1226(c)(1)(E); *Patel v. Crowley*, 2025 WL 2996787, at *8 (N.D. Ill. Oct. 24, 2025). If Section 1225(b)(2)(A) requires the mandatory detention of all foreign nationals within the United States as Respondents assert, Section 1226(c) and its recent amendment would be superfluous and of no effect, because the subset of foreign nationals subject to mandatory detention under Section 1226(c) would already be included within Respondents' expansive reading of Section 1225(b)(2). *Patel*, 2025 WL 2996787, at *8; *H.G.V.U. v. Smith*, 2025 WL 2962610, at *5 (N.D. Ill. Oct. 20, 2025). Moreover, Respondents' interpretation of Section 1225(b)(2)(A) "would largely nullify § 1226(a) because it is not clear under what circumstances § 1226(a)'s authorization of detention on a discretionary basis would ever apply." *Patel*, 2025 WL 2996787, at *8 (internal citation omitted). Further, while Section 1226(a) specifically states that Section 1226(c) is an exception to Section 1226(a), it does not similarly exclude Section 1225(b)(2)(A). 8 U.S.C. § 1226(a). The "express exception" to Section 1226(a)'s discretionary detention authority in Section 1226(c) "implies that there are no *other* circumstances under which" a noncitizen detained under Section 1226 is subject to mandatory detention. *Jennings*, 583 U.S. at 300 (emphasis in original).

The Supreme Court has made clear that "[a] statute should be construed so that effect is given to all its provisions[.]" *Corley v. United States*, 556 U.S. 303, 314 (2009). Moreover, each word in a statute is intended to have particular, non-superfluous meaning and statutes must be construed in this manner. *Bilski v. Kappas*, 561 U.S. 593, 607–08 (2010) (courts may not interpret "any statutory provision in a manner that would render another provision superfluous."). Although the rule disfavoring surplusage is not absolute, *see Stanley v. City of Sanford*, 606 U.S. 46, 56 (2025), the rule has considerable force here because its application "gives effect to every clause and word of a statute[.]" *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013). The canon "is strongest when an interpretation would render superfluous another part of the *same* statutory

10

scheme." *Id.* at 386 (emphasis added). Here, not only are the two terms in the same statutory scheme, they are in the same sub-paragraph and in the same single sentence, and only eight words separate the two terms. An "alien seeking admission" thus must mean something different than "applicant for admission." *See* 28 U.S.C. § 1225(b)(2)(A).

Petitioner has been in the United States since October 27, 2024. [3] ¶ 10. He has no criminal record. *Id.* ¶ 22. He is far beyond "seeking" admission into the United States. Therefore, Section 1226(a) applies to him and he is entitled to a bond hearing.

To overcome both the plain language of the statute and binding precedent, Respondents rely on *Matter of Yajure Hurtado*, a decision issued by the Board of Immigration Appeals (BIA) on September 5, 2025. [8-2] at 27–31. There, the BIA reversed course as to its longstanding interpretation of the INA and held that "Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission." 29 I&N Dec. 216 (BIA 2025). The Court rejects the BIA's interpretation in *Yajure Hurtado*, and notes that it is neither binding on nor persuasive to this Court. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 400 (2024) (agencies have "no special competence" in statutory interpretation and federal courts have an "obligation to independently interpret" statutes). The Court also recognizes that *Yajure Hurtado* is at odds with "longstanding agency practice of providing § 1226(a) bond hearings to noncitizens like [Petitioner.]" *Ochoa Ochoa v. Noem*, 2025 WL 2938779, at *7 (N.D. Ill. Oct. 16, 2025); *see Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 490–91 (S.D.N.Y. 2025) (discussing the longstanding practice of applying Section 1226(a) to noncitizens already in the country). Thus, while *Yajure Hurtado* is not binding, this Court may instead look to longstanding agency practice to inform its understanding of the relevant statutes. *Loper Bright*, 603 U.S. at 386. Further, courts in this district have soundly rejected the BIA's new interpretation of Section 1225(b)

11

and applied Section 1226(a) in similar factual circumstances. *Miguel v. Noem*, 2025 WL 2976480, at *4–7 (N.D. Ill. Oct. 21, 2025) (Alonso, J.); *H.G.V.U. v. Smith*, 2025 WL 2962610, at *4–5 (N.D. Ill. Oct. 20, 2025) (Coleman, J.); *Ochoa Ochoa v. Noem*, 2025 WL 2938779, at *4–7 (N.D. Ill. Oct. 16, 2025) (Jenkins, J.); *G.Z.T. v. Smith*, No. 25 C 12802, Dkt. 14 (N.D. Ill. Oct. 21, 2025) (Ellis, J.); *Cortes v. Olsen*, 2025 WL 3063636, at *4 (N.D. Ill. Nov. 3, 2025) (Kennelly, J.); *Maldonado v. Crowley*, No. 25 C 12762, Dkt. 16 (N.D. Ill. Oct. 24, 2025) (Daniel, J.); *Patel v. Crowley*, 2025 WL 2996787, at *4–8 (N.D. Ill. Oct. 24, 2025) (Cummings, J.); *Perez v. Noem*, 2025 WL 3140692, at *3–4 (N.D. Ill. Nov. 10, 2025) (Kendall, J.); *Diaz v. Olson*, 2025 WL 3022170, at *3–6 (N.D. Ill. Oct. 29, 2025) (Shah, J.); *Guartazaca Sumba v. Crowley*, 2025 WL 3126512, at *3–5 (N.D. Ill. Nov. 9, 2025) (Chang, J.); *Rios v. Noem*, 2025 WL 3124173, at *2–3 (N.D. Ill. Nov. 7, 2025) (Rowland, J.); *Arizmendi v. Noem*, 2025 WL 3089107, at *3–5 (N.D. Ill. Nov. 5, 2025) (Pallmeyer, J.); *Flores v. Olson*, 2025 WL 3063540, at *3 (N.D. Ill. Nov. 3, 2025) (Gettleman, J.); *D.E.C.T. v. Noem*, 2025 WL 3063650, at *4–5 (N.D. Ill. Nov. 3, 2025) (Tharp, J.). In agreement with almost every district court to have considered the issue, the Court finds that the "statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice" all lead to the same conclusion: Section 1226(a), not Section 1225(b)(2), applies to situations like Petitioner's where ICE detains a noncitizen already residing in the United States. *See Sanchez v. Olson*, 2025 WL 3004580, at *3–4 (N.D. Ill. Oct. 27, 2025) (collecting cases).

This interpretation is supported by the non-binding analysis recently conducted by Judge Lee in *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828 (7th Cir. 2026). There, Judge Lee reviewed the text of Section 1225(b)(2)(A) and rejected the government's view that an "alien who is an applicant for admission" is necessarily an "alien seeking admission" and therefore subject to mandatory detention. *Id.* at 845. Congress could have—but did not—include noncitizens

12

who are "seeking admission" within the definition of "applicant for admission" and the government's reading would render certain words as surplusage. *Id.* at 847. Further, Section 1225(b)(2)(A) applies to immigrants during their "examination" at the border, thus the text of the statute "in its entirety indicates that the mandatory detention it authorizes is directed at arriving noncitizens, not those who are already here." *Id.* at 848. Judge Lee further found that Section 1225(b)(2)(A) only applies to those seeking admission at the border when read in the specific context of the language used, including the Section's title and its border-focused provisions on stowaways and the inspection of vessels and aircraft. *Id.* at 849. The statute's history and background further support an interpretation that Section 1225 was only intended to apply to individuals at the border. *Id.* at 851–55. This includes, as discussed above, the 2025 Laken Riley Act which amended Section 1226(c). *Id.* at 854. The Court adopts and incorporates the reasoning by Judge Lee for why the text, statutory context, legislative history, and long-standing executive practice all confirm that Section 1225(b)(2)(A) applies to applicants for admission who are seeking entry at the border and not those already living within the United States.

Respondents' newest argument is equally unpersuasive. Respondents contend that Section 1225(b)(2) governs here because Petitioner's Notice to Appear from his initial entry into the country identifies him as an "arriving alien." [8] at 1–2. How Petitioner was identified on a form by an immigration officer upon his entry to this country almost two years ago does not change this Court's analysis or the plain text of the applicable statutes. As other courts in this district have concluded when faced with similar circumstances, Section 1226(a) applies to noncitizens who are already here, including those who have asylum petitions pending when they are arrested and detained. *See, e.g.*, *Bracamonte v. Noem*, 2026 WL 289505, at *4 (N.D. Ill. Feb. 4, 2026); *Karimov*

*v. Crowley, et al.*, No. 1:26-cv-01154 (N.D. Ill. Feb. 17, 2026); *Borbuev v. Swearingen*, No. 1:26-cv-03647 (N.D. Ill. April 13, 2026).

### III.    Due Process

Having concluded that Petitioner's detention is discretionary and not mandatory, the Court turns to whether it violates due process.  The Due Process Clause of the Fifth Amendment applies to noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690.  Government detention in immigration proceedings may violate that Clause unless "in certain special and narrow nonpunitive circumstances . . . where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (cleaned up).  Courts apply a three-factor balancing test to determine whether a violation of procedural due process has occurred: (1) the private interest implicated by the government action; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Respondents rely on *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), to support their argument that Petitioner has limited due process rights. [8-2] at 20–21.  In

14

*Thuraissigiam*, the Supreme Court held that a petitioner who was still "at the threshold of initial entry," though technically in the country, could still be treated as "an alien seeking initial entry." 591 U.S. at 107, 114, 139 (holding that a noncitizen detained "within 25 yards of the border" is treated as if stopped at the border and had not acquired due process protections). However, contrary to Respondents' arguments, *Thuraissigiam* held only that noncitizens detained close to the border "shortly after unlawful entry" have not yet "effected an entry." *Id.* at 140; *see also Shaughnessy v. United States*, 345 U.S. 206, 212 (1953) (explaining that noncitizens "on the threshold of initial entry stand[ ] on a different footing" than those who have "passed through our gates"). *Thuraissigiam* presents a scenario distinguishable from the one before the Court, where Petitioner has been in this country for almost two years and was arrested while attending a biometrics appointment for his work authorization. [3] ¶¶ 19–23. Further, in *Thuraissigiam*, the Supreme Court explicitly distinguished long-present noncitizens, noting that its earlier holding in *I.N.S. v. St. Cyr*, 533 U.S. 289 (2001), the habeas "writ could be invoked by aliens already in the country who were held in custody pending deportation." *Thuraissigiam*, 591 U.S. at 137. So even Respondents' best support acknowledges that long-time resident noncitizens, such as Petitioner, sit in an altogether different category than those seeking admission in the more literal sense.

Here, Petitioner has been in the United States for almost two years and therefore was "already in the country." *See Jennings*, 583 U.S. at 289; [3] ¶ 19. The Fifth Amendment's "Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Thus, Petitioner is entitled to Due Process protections.

Applying the three-part balancing test set forth in *Mathews*, Petitioner's detention without a bond hearing violates procedural due process. First, Petitioner has a cognizable private interest

in being freed from unlawful detention through a bond hearing. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests—the interest in being free from physical detention by [the] government."). Second, there is a severe risk of erroneous deprivation based on the factual record and the fact that without a hearing, an immigration judge is unable to determine whether the requirements are met for detention. This is further emphasized by the fact that Respondents have put forward no evidence in this proceeding that Petitioner is a flight risk or a danger to his community, particularly when he has not been for the past 2 years. And third, the government's interest is slight insofar as Petitioner was detained without an individualized custody determination that evaluated dangerousness and flight risk or any articulated change in circumstances. As other courts have concluded in factually similar cases, Petitioner's detention without a bond hearing amounts to a due process violation. *See, e.g.*, *Ochoa Ochoa*, 2025 WL 2938779, at *7; *Miguel*, 2025 WL 2976480, at *7; *Sanchez*, 2025 WL 3004580, at *4; *Perez*, 2025 WL 3140692, at *4–5.

**IV.     Scope of Relief**

Petitioner requests immediate release from custody or, alternatively, an individualized bond hearing.[3] The latter is appropriate here, as the procedural due process violation arises from his detention under Section 1226(a) without a bond hearing, rather than the detention itself. At Petitioner's bond hearing before the immigration judge, the government bears the burden to prove by clear and convincing evidence that the detainee poses a danger or flight risk. *See Ochoa*, 2025 WL 2938779, at *8 (collecting cases placing the burden on the government by an "overwhelming consensus").

---

[3] Petitioner also asserted a claim that he is entitled to relief under the Administrative Procedures Act. Because the Court finds that Petitioner is entitled to a bond hearing based on his INA and Due Process theories, it does not reach the APA theory of relief.

**Conclusion**

For these reasons, the First Amended Petition for Writ of Habeas Corpus [3] is granted. Petitioner's detention without an individualized custody determination violates the INA and the Due Process Clause of the Fifth Amendment. Within five days of the issuance of this Opinion, Respondents are ordered to either: (1) afford Petitioner a bond hearing before an Immigration Judge under 8 U.S.C. § 1226(a), at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Petitioner's continued detention; or (2) release Petitioner from custody, under reasonable conditions of supervision.

The Court's prior Order stands that, so long as Petitioner is in custody, he is not to be removed from the jurisdiction of the United States and shall not be transferred to any judicial district outside the states of Illinois, Wisconsin, and Indiana. If, in the event Petitioner is transferred to another facility or other location, Respondents must notify the Court and Petitioner's counsel at least 72 hours prior to the transfer.

**SO ORDERED.**

Dated: June 9, 2026

_____

Sunil R. Harjani
United States District Judge

17